U.S. Department of Justice



*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 14, 2014

**BY ECF**
Honorable Paul G. Gardephe
United States District Court
Southern District of New York
United States Courthouse
New York, New York 10007

      Re:    **United States v. Davit Mirzoyan**
              **10 Cr. 895 (PGG)**

Dear Judge Gardephe:

      The Government writes with the consent of defense counsel in response to the Court's June 16, 2014 and July 11, 2014 Orders. Specifically, the Government writes to explain the rationale behind the guidelines calculation contained in the sentencing agreement entered into between the parties and why it differs from the calculation contained in the initial Pre-Sentence Report. As an initial matter, and as referenced in the Government's July 9, 2014 letter, the Probation Officer intends to submit a substantially revised guideline calculation which will match to a large degree, if not entirely, the guideline calculation contained in the parties sentencing agreement.

      Loss Amount

      The first area that the sentencing agreement differs from the PSR is with respect to loss amount. The Probation Department calculated an intended loss amount of $100 million dollars to $200 million dollars. The sentencing agreement calculates an intended loss amount of $20 million dollars to $50 million dollars. While the amount billed based on information provided by the Department of Health and Human Services appears to be approximately $105 million dollars, the lower loss amount in the sentencing agreement reflects an intensive endeavor by the Government to determine with as much precision as possible the amount of money Mirzoyan and his co-conspirators could theoretically have received from Medicare.

      As Your Honor may know, Medicare billing is done on a fixed schedule that only allows for

1

for a certain amount to be repaid (and this would have been known to the co-conspirators because because the schedules were provided to them).  In other words, there are fixed percentages and amounts that generally do not allow for full repayment of the amount billed and often don't allow for allow for payment of a significant portion of the amount billed.  After much review and consideration, it appears that based on the information provided by the Department of Health and Human Services, the maximum amount Mirzoyan and his co-conspirators could have been paid out out based on the type of billings generally done, and the amounts, would have been less than fifty fifty million dollars.

A second way the Government considered calculating the intended loss was using the actual actual amount paid out to the clinics, as provided to the Government by the Department of Health Health and Human Services, roughly $32.6 million dollars, plus the amount recalled or suspended suspended because of the detection of fraud, roughly $6.6 million dollars.[1]  Even if this method were were used, the intended loss would total approximately $39.2 million dollars.

In either case, the intended loss amount is in the $20 - $50 million dollar range.  The Probation Officer indicated that she agreed with this calculation and would likely revise the PSR accordingly.

### Money Laundering Guidelines

The Court asks in its June 16, 2014 Order why the Court should not apply the money laundering guidelines in its grouping analysis under USSG §3D1.3(a).  The parties don't disagree that the money laundering guidelines would be a proper basis to calculate the guidelines here, since Mirzoyan pleaded guilty to money laundering, however that calculus does not result in a higher guidelines range than the fraud guidelines of 2B1.1.  The reason is that although Mirzoyan was the leader of the fraud, hence the four point enhancement under the sentencing agreement, the parties agree that he was not a leader of the money laundering activities.

Application Note 2(C) to USSG §2S1.1 makes clear that where, like here, the guidelines are calculated using Section 2S1.1(a)(1) (the offense level from the underlying offense from which the laundered funds were derived), "application of any Chapter Three enhancements shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived." In other words, the relevant inquiry for purposes of this guidelines is not whether Mirzoyan was a leader of the underlying fraud, but whether he was a leader of the money laundering activities. See United States v. Preldakaj, 489 F. App'x 507, 510 (2d Cir. 2012). Since the parties agree that Mirzoyan was not a leader of the money laundering activities, no leadership enhancement is applied under 2S1.1 and the guidelines for money laundering are not higher than the guidelines for the fraud.  The Probation Officer indicated after our meeting that she agreed with our assessment and would likely revise the PSR accordingly.

### Victim Enhancement

---

[1] If one were calculating actual loss, you would also substitute the nearly six million dollars in seizures from the $32.6 million figure described above.

2

The Probation Department calculated a six level enhancement because the offense involved more than 250 victims of identity theft. The sentencing agreement calculated a two level enhancement reflecting a reduced total of 10 to 49 identity theft victims. The Government and defense counsel both went back through the discovery in this case and determined that there was direct evidence that Mirzoyan personally participated in fraudulently obtaining 10 to 49 stolen identities. Although the conspiracy unquestionably involved more than 50 stolen identities, the parties felt that in the context of an agreed upon disposition it was reasonable to hold the defendant responsible for the amount of identity theft he personally participated in (consistent with how loss amount has been apportioned throughout this case varying on the degree to which each defendant participated in the healthcare fraud). The Probation Officer indicated that she was likely to revise the PSR to agree with the parties assessment of a two-level enhancement.

### Enhancement for Producing other Means of Identification

The PSR also assigned a two-level enhancement for unlawfully producing or obtaining other means of identification. This enhancement has been applied sparingly and principally to defendants like Robert Terdjanian who, in a somewhat distinct scheme, obtained fraudulent credit cards in the names of real people (i.e., obtained other means of identification). Mirzoyan's leadership of the healthcare fraud does not merit this enhancement (indeed the defendant did not plead guilty to Count Six of the Indictment and the Government intends to dismiss that count at the time of sentencing). Although to be sure identities were stolen as part of this fraud scheme those stolen means of identification were not used to produce or obtain other means of identification. Having discussed this issue with the Probation Officer, she indicated that she is inclined to agree with the parties and will likely remove this enhancement from her guidelines calculation.

### Gross Receipts

The PSR includes a two level enhancement because Mirzoyan allegedly derived more than one million dollars in gross receipts from one or more financial institutions as a result of the offense. The PSR cites to USSG Section 2B1.1(b)(15)(A) as support for the enhancement. In meeting with the Probation Officer she explained that she believed the enhancement applied because Medicare is a "financial institution."

The parties agree that this enhancement should not apply because Medicare does not qualify as a "financial institution" as defined by USSG §2B1.1(b)(15)(A). See United States v. Soileau, 309 F.3d 877 (5th Cir. 2002)(holding that Congress has never defined the term "financial institution" to include the Medicare Program nor directed the Sentencing Commission to do so and it appears the Commission has never exercised its authority in order to include Medicare in the definition of "financial institution"); see also United States v. Goncalves, 613 F.3d 601 (5th Cir. 2010); United States v. Sirotina, 318 F.Supp.2d 43, 46 (E.D.N.Y. 2004)(recognizing that Medicare does not qualify as a "financial institution.")

3

The parties have sent the Probation Officer some of the above cited case law and the Probation Officer is reexamining the applicability of this enhancement.

<u>2009 Guidelines</u>

The parties do not oppose the application of the 2009 guidelines manual, instead of the 2010 manual.

The parties initially agreed to apply the 2010 manual because if a later version was used, it would raise *ex post facto* concerns. <u>See</u> USSG §1B1.11(b)(1). The offense conduct was alleged to have occurred between 2006 and 2010. The 2011 guidelines implemented a new enhancement - namely Section 2B1.1(b)(8) – after the last date of the offense (September 2010). Therefore use of the 2011 guidelines manual would expose Mirzoyan to additional punishment based on an enhancement not in effect on the last date of the offense of conviction. Accordingly, the parties applied the 2010 sentencing guidelines.

However, to the extent that the parties are not prejudiced in any way, and it appears that neither party would be prejudiced, both Mirzoyan and the Government have no objection to the application of the 2009 sentencing guidelines to determine an advisory guideline range.

        Respectfully submitted,

        PREET BHARARA
        United States Attorney
        Southern District of New York

By: _____/s/_____
        Harris Fischman/Jennifer Burns
        Assistant United States Attorney
        (212) 637-2305/2315

CC: Joseph DiBenedetto